640

*In the Matter of the Estate of* Alice Churchill,
*Deceased.*

Barbara Balletti, *Appellant,* v. T. F. Mentzer *et al.,*
*Respondents.*[1]

*P. C. Kibbe,* for appellant.
*Yantis & Brodie,* for respondent.

Beals, J.—Alice Churchill died April 12, 1927, and a few weeks thereafter Barbara Balletti, a daughter of Mrs. Churchill, was appointed administratrix of her estate, T. F. Mentzer acting as her attorney. Notice to creditors was regularly published, commencing

[1]Reported in 290 Pac. 218.

July 8, 1927, and an inventory of the property belonging to the estate was prepared and .signed by the administratrix July 8, 1927, the property being on the same day appraised by three appraisers who, it seems to be agreed, had theretofore been regularly appointed by the court. These appraisers valued the estate, which consisted of real and personal property, at $4,-439.50. This inventory and appraisement was filed August 9 following.

September 12, 1927, the administratrix filed in the office of the clerk of the superior court a notice bearing date August 10, 1927, to the effect that she had substituted P. C. Kibbe as her attorney, the record being silent as to any service of this notice upon her former counsel. On the day of the filing of this notice, the administratrix also filed her affidavit to the effect that the estate .had been appraised,

". . . but that said property cannot be sold for the amount of the appraisement, and that said appraisement is too high, and she asks for the appointment of appraisers for reappraisement."

On the same date, there was also filed the petition of William F. Churchill, widower of the decedent and the father of the administratrix, alleging that no homestead had been claimed at any time out of said estate, "that the funeral expenses and expenses of last sickness have been paid and the costs of administration have been provided for," and asking that all property of said estate be set over to him "as his homestead as by law provided." Notice of hearing on the petition of William F. Churchill was filed, and the record contains an affidavit to the effect that copies thereof were posted as required by law.

September 26 following, the administratrix prepared a new inventory of the property of the estate, and, on the same day, three persons, who at that time were

entire strangers to the record, took the usual oath as appraisers of the estate and made an appraisement of the property thereof, valuing the same at the sum of $2,700. This inventory and appraisement was filed September 27, on which day the court made an order appointing the three men who had the day before appraised the estate, as appraisers thereof. The same day, September 27, the court made an order setting over all the property of the estate to William F. Churchill, as survivor of the community composed of himself and his late wife, the order providing that no further administration be had.

August 6, 1928, T. F. Mentzer filed his petition to set aside the order awarding the estate to William F. Churchill and to reopen the estate, alleging the facts hereinabove recited, and also that his compensation for services as attorney for the administratrix had not been paid, and that the estate was indebted to him for advances made to cover costs necessarily incurred in the course of the administration. The petition also alleged that the property of the estate was in fact of far greater value than $3,000, and that, September 27, 1927, William F. Churchill had conveyed all of the estate, which was that day awarded to him, to Barbara Balletti, his daughter, the administratrix of the Alice Churchill estate, and Lee Balletti, her husband, and that William F. Churchill had died a month or so thereafter.

On the same day was filed the petition of Viola Wallace, who alleged that she was a creditor of Alice Churchill and William F. Churchill, and that there was a considerable balance due petitioner from the estate of Alice Churchill. We do not find any further discussion of the petition of Viola Wallace necessary to a determination of the issues here presented.

Petitioner T. F. Mentzer also filed his affidavit, set-

ting forth substantially the facts alleged in his petition, and Barbara Balletti, the administratrix, filed her answer to Mr. Mentzer's petition, alleging that Mr. Mentzer had insisted upon having the property of the estate appraised at more than its real worth, and that she had become dissatisfied with the way Mr. Mentzer was conducting the administration of the estate; that the estate was indebted to her and her husband in the sum of $2,000; that she and her father, William F. Churchill, repeatedly tried to sell the property belonging to the estate for the sum of $3,000, but could not do so; and that to please her father, Mrs. Balletti agreed to buy the property for $3,000, which deal was consummated not long prior to her father's death.

Mrs. Balletti further alleged that she offered Mr. Mentzer a check for $60, which he refused to accept, and that she was, and is, solvent, and admits her personal liability to Mr. Mentzer for any amount justly due him; that the charge made by Mr. Mentzer is exorbitant and had never been properly presented. Mrs. Balletti further alleged that she had made an agreement with her brothers and sisters concerning the distribution of the estate. She attached to her answer a copy of an agreement between her father on the one part, and her husband and herself on the other, concerning the property of the estate. Mr. Mentzer replied to Mrs. Balletti's petition, Mrs. Balletti's present counsel filing his affidavit in support of his client's contention, and, upon the issues so made up, the action was tried to the court, being submitted upon the record, no oral testimony having been introduced.

After a hearing, the trial court, being of the opinion that the order setting aside all of the property of the Alice Churchill estate to William F. Churchill had been improperly made, that the expenses of administration of the estate had not been paid or arranged for, that

the property of the estate had been, in the first place, appraised in an amount exceeding $3,000, that a subsequent appraisement had been made fixing a lower valuation of the property, and that, as a matter of fact, the value of the property involved is in excess of $3,000, vacated and set aside the order of September 27, 1927, awarding the property to William F. Churchill, and reopened the estate for further proceedings in the regular course of administration. From this order, Barbara Balletti appeals, the appeal being taken by her both as administratrix and as an individual.

Appellant contends that, as she admitted liability to her former attorney for any amount justly due him for services rendered and expenses incurred in connection with the administration of her mother's estate, the trial court erred in setting aside the order distributing the estate to her father and terminating the administration thereon. In support of her contention that the order referred to should not have been vacated, appellant cites the law governing the awarding of the property of an estate to a surviving spouse under Rem. Comp. Stat., § 1473, which provides that the order or judgment of the court making the award "shall be conclusive and final, except on appeal and except for fraud," together with certain decisions of this court which we shall now consider.

In the opinion of this court in *In re Hamilton's Estate,* 108 Wash. 326, 184 Pac. 337, it appears that the widow, being the administratrix of the estate of her deceased husband, petitioned the court to set aside to her the home in which she and the deceased had lived, together with certain personal property. Upon the hearing on this petition, after due notice given in compliance with the order of the court, the prayer of the petition was granted and the property set over to the

widow, the balance of the quite considerable estate being administered upon in the usual course of law. Thereafter a brother of the decedent moved to set aside the order granting a homestead to the widow upon the ground that the moving party, one of the heirs of the deceased, had had no notice of the petition, and upon the further ground that the law pursuant to which the petition was filed was unconstitutional.

The opinion expressly states that the question of fraud, either in fact or law, was not involved in the proceeding, and that the trial court, having had jurisdiction of the parties and of the subject-matter, had jurisdiction to enter the judgment complained of, which judgment was thereafter subject to attack only by appeal in the manner provided by law. The court also held that the law providing for the award was constitutional, and affirmed the judgment of the trial court denying the motion to vacate the order complained of.

In the case at bar, respondent contends that the record shows facts which constitute fraud in fact or in law, and that, therefore, the case cited is not in point, this court in that case having expressly stated that no question of fraud was presented. As we agree with respondent's contention that the record now before us shows facts which constitute fraud in law, the case referred to is not controlling here.

Appellant next cites the case of *In re Andrews' Estate,* 123 Wash. 546, 212 Pac. 1073, in which this court quoted, with approval, from its former decision in *In re Hooper's Estate,* 117 Wash. 463, 201 Pac. 740, language holding that statutes similar to that in question here should be liberally construed for the purpose of effecting the object intended. This is undoubtedly the rule, but it is also the rule that, in attempting to procure the benefit of such legislation, the moving

party must himself comply with the law and take no steps which tend to deceive or mislead the court, or which prevent a full and complete disclosure of all relevant facts.

In the case of *Adams v. McFarling,* 126 Wash. 484, 218 Pac. 195, it was held that an order awarding to a widow certain real property should not thereafter be set aside upon the petition of heirs of the decedent alleging that the widow had deserted the deceased years before his death; and had, during the lifetime of her husband, lived with another man as his wife, and that, in an effort to obtain the property awarded to her, she had testified falsely. Neither the petition to award property to the widow, nor the notice of hearing thereon, nor any testimony or findings, nor even the order sought to be vacated were contained in the record brought before this court. It was held that, in the absence of any showing to the contrary, it must be assumed that the provisions of law had been complied with, and that the court had jurisdiction to make the order setting aside the property to the widow. Under the circumstances disclosed by the record in the case last referred to, it was necessarily held that the petition to vacate the order had been properly denied.

Appellant also cites the case of *Manning v. Alcott,* 137 Wash. 13, 241 Pac. 287, in which it was held that an order awarding a homestead to the surviving husband was good as against a subsequent action on the part of a daughter of the deceased attacking the order of award and other portions of the probate proceeding, and praying for an accounting. This court held that the plaintiff failed to allege or prove facts sufficient to require the vacation of the order of award, although the plaintiff obtained other relief to which it was held she was entitled. It was held that the action of the superior court, in making the award, must

be presumed to have been regular in the absence of any showing to the contrary; that the matter of giving of notice of hearing upon an application for such an award is one that is left to the determination of the trial court, and that, if no notice was given, upon an attack upon the order, such as was made in the case cited, it must be conclusively presumed that the court determined that no notice was necessary; and that, finally, the decree of distribution later made in the estate was binding and conclusive upon all persons interested, including the plaintiff.

In *In re Johnson's Estate,* 114 Wash. 61, 194 Pac. 834, this court affirmed an order of the superior court setting aside $3,000 to the widower of the decedent. Issues were made up upon the petition of the surviving husband, and a hearing was had which resulted in the order making the award, from which order the appeal was taken to this court, the appellants urging that the property set over to the surviving husband was in fact of greater value than $3,000, and urging certain other contentions to the effect that the allowance was improperly made. Appellants contended that the evidence as to value of the property was insufficient. This court refers to the fact that the report of the appraisers of the estate was on file, and that certain other testimony as to value introduced on behalf of the petitioner had been received without objection. It is also noted that the appellants themselves, at the hearing, did not attempt to dispute the value which the petitioner placed upon the property. We do not find that this case supports appellant's position.

On the other hand, this court, in *In re Fick's Estate,* 111 Wash. 318, 190 Pac. 1008, affirmed an order of the superior court setting aside an order awarding to a widow certain property of the estate of her late husband, the trial court having held that the order was

648

obtained by fraud. Whether or not the act of 1917, providing for an award to the surviving spouse, under which act the award was made in the case at bar, was applicable, was a disputed question, but this court held that, even if the act of 1917 did apply, there was ample evidence of fraud to justify the action of the trial court in vacating the order complained of. It is true that, in that case, the rights of minors were concerned, but other facts were also considered which, it was held, justified the vacation of the order of award.

In the case at bar, the order appointing the second set of appraisers had not been signed at the time the three men subsequently named attempted to make an appraisement of the property. This was a fact the trial court was entitled to take into consideration in making the order from which appellant appeals. The three men who made the second appraisement of the property of the estate had, at the time they functioned, absolutely no authority to act in the capacity in which they purported to appraise the property. It does not appear that they ever, at any later date, met to reaffirm their action, and while, as they were subsequently regularly appointed as appraisers, the fact that their appraisement preceded their appointment might well, if unobjected to, constitute no more than an irregularity that would not render their acts void, the situation, upon objection being subsequently raised, was such as to warrant the trial court in holding that the order awarding the estate to Mr. Churchill, which order must have been based largely, in so far as the value of the property of the estate was concerned, upon the appraisement, should be set aside and the entire matter thrown open for further proceedings. The fact that Mr. Churchill died shortly after the award to him might well have been considered by the trial court, but would not of itself require any

different ruling than that of which appellant complains.

Giving due consideration to that discretion with which superior courts of this state are vested by law in passing upon questions such as were presented to the trial court in this case, we hold that the record before us shows no reversible error, and that the order appealed from should be affirmed. It is so ordered.

MITCHELL, C. J., TOLMAN, MILLARD, and MAIN, JJ., concur.